UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JEDEDIAH L. HIGGINBOTHAM** | **CIVIL ACTION** |
| **VERSUS** | **NO: 15-898** |
| **DRAKE TOWING, L.L.C. AND DRAKE ENERGY PARTNERS, L.L.C.** | **SECTION: "S" (3)** |

### ORDER AND REASONS

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (Doc. #21) is **GRANTED**, and plaintiff's claims are **DISMISSED.**

### BACKGROUND

This matter is before the court on a motion to dismiss filed by defendants, Drake Towing, L.L.C. and Drake Energy Partners, L.L.C. Defendants argue that this court lacks subject-matter jurisdiction over plaintiff's claims because plaintiff cannot satisfy the criteria for admiralty jurisdiction.

Saratoga Resources, Inc. was lessee in an oil and gas lease in the South Atchafalaya Basin within Louisiana's territorial waters in St. Mary Parish. Saratoga contracted with Alliance Oilfield Services to perform plug and abandonment work involving a Saratoga fixed platform on the leased property. Plaintiff, Jedediah L. Higginbotham, was employed by Alliance, and worked on the plug and abandonment operation.

Drake Energy chartered an IMIV barge from its owner, Inland Marine, L.L.C., and then time chartered the IMIV to Saratoga to be used at Saratoga's well site in the South Atchafalaya Basin. The IMIV is a one-hundred-feet long by forty-eight-feet wide spud barge that has sleeping quarters, a galley and a thirty-ton crane. The IMIV does not have engines, and must be towed or pushed into place by another vessel. Once in place, the spuds are lowered and the IMVI is secured to the

riverbed.  The IMIV was secured in place next to Saratoga's well.  Higginbotham slept and ate aboard the IMIV as he worked in the plug and abandonment operation.

Drake Towing is a wholly-owned subsidiary of Drake Energy.  Drake Towing supplied the two crew members of the M/V MISS KENNEDY, a pushboat that was used to move barges at the Saratoga well site.

On April 19, 2013, Higginbotham, filed a petition in the 215th Judicial District Court, Harris County, Texas, against Saratoga Resources, Inc., Drake Towing LLC and John Doe Company Man alleging that he was injured on April 22, 2012, when he fell off the well while working at night in the plug and abandonment operation.  Thereafter, plaintiff amended his petition to include allegations that Saratoga and Drake Towing were negligent for failing to provide a safe means of ingress and egress between the IMIV and the well, a safe place to work, a work basket or other platform for him to stand on to perform the work on the well, and fall protection.  He also alleged that Saratoga and Drake Towing were negligent for allowing the work to be conducted at night, without adequate lighting. After discovery was conducted, Higginbotham settled his claim against Saratoga.  Higginbotham filed a "Notice of Nonsuit without Prejudice," voluntarily dismissing his claims against Drake Towing.

On March 23, 2015, Higginbotham filed this action in the United States District Court for the Eastern District of Louisiana against Drake Towing and Drake Energy seeking damages associated with the April 22, 2012, accident that was the basis of the Texas state court suit.[1] Higginbotham alleged that this court has admiralty subject-matter jurisdiction under 28 U.S.C. §

---

[1] On April 22, 2015, Higginbotham filed his first amended complaint which added Inland Marine, LLC as a defendant.  On June 17, 2015, Higginbotham voluntarily dismissed without prejudice his claims against Inland Marine in accordance with Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure.

1333. As in the Texas state court case, Higginbotham alleges that he was injured on April 22, 2012, when he was working at night in the plug and abandonment operation. Higginbotham alleges that Drake Towing and Drake Energy, collectively referred to in the complaint as "Drake," "owned and/or crewed the M/V *Drake*, and operated and/or crewed the [IMIV] vessels involved in the incident made the basis of this suit, vessels operating in navigable waters and part of the work site flotilla[,]" and that these vessels supported the plug and abandonment operation. Higginbotham also alleges that "Drake" was negligent or grossly negligent, and that the vessels were unseaworthy by: (a) failing to maintain the vessels and her appurtenances and equipment in a safe and reasonable state of repair; (b) failing to properly light the work site; (c) failing to take reasonable precautions for his safety; and (d) failing to provide him, an invitee, with a reasonably safe place to work.

Drake Towing and Drake Energy filed a motion to dismiss arguing that this court lacks admiralty subject-matter jurisdiction over this action because Higginbotham fell off of a fixed platform, which is considered land, and no vessel under the control of either Drake entity was involved in the accident. Higginbotham opposes the motion arguing that his damages were caused by a vessel in navigation, contending that the IMIV was a vessel because it served a transportation function on the job, and because the M/V MISS KENNEDY was present at the time of his accident.

## ANALYSIS

**I.      Rule 12(b)(1) of the Federal Rules of Civil Procedure**

"Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case." Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001). "Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts

evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Id. In a 12(b)(1) motion, the party asserting jurisdiction bears the burden of proof that jurisdiction does in fact exists. Id.

## II.     Admiralty Jurisdiction

The Constitution of United States extends federal judicial power "to all Cases of admiralty and maritime Jurisdiction." U.S. CONST. art. III, § 2. Congress has embodied that power in 28 U.S.C. § 1333(1), which states that federal district courts have "original jurisdiction . . . of . . . [a]ny civil case of admiralty or maritime jurisdiction." The Extension of Admiralty Jurisdiction Act of 1948, 62 Stat. 496, invested "admiralty with jurisdiction over 'all cases' where the injury was caused by a ship or other vessel on navigable water, even if such injury occurred on land." Grubart, Inc. v. Great Lakes Dredge & Dock, 115 S.Ct. 1043, 1048 (1995). "[A] party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. §§ 1333(1) over a tort claim must satisfy conditions both of location and of connection with maritime activity." Id. As the United States Court of Appeals for the Fifth Circuit recently explained:

> The location test is satisfied if the tort occurred on navigable waters or if the injury occurred on land but was caused by a vessel on navigable waters. The tort occurred on navigable waters if the harm took effect there. The connection test is satisfied if two conditions are met. First, the general features of the type of incident involved must have a potentially disruptive impact on maritime commerce. The court uses a description of the incident at an intermediate level of possible generality, that is neither too broad to distinguish among cases nor too narrow to recognize potential effects on maritime commerce. Second, the general character of the activity giving rise to the incident must show a substantial relationship to traditional maritime activity. The court considers whether a tortfeasor's activity, commercial or noncommercial, on navigable waters is so closely related to activity traditionally subject to admiralty law that the reasons for applying special admiralty rules would apply in the suit at hand.

In re La. Crawfish Producers, 772 F.3d 1026, 1029 (5th Cir. 1014) (internal quotations and citations omitted).

In this case, Higginbotham cannot satisfy the location test. His injury occurred when he fell off of a fixed platform and struck some of its beams before falling into State territorial waters. His injury is therefore "land based." See Bible v. Chevron Oil Co., 460 F.2d 1218, 1219 (5th Cir. 1972) (finding that the plaintiff incurred a "land based" injury when he was pulled off of a drilling platform and struck a platform support beam before falling into State territorial waters). Thus, for admiralty jurisdiction to apply, Higginbotham must allege that his injury was caused by a vessel on navigable waters. To this end, he alleges that the M/V DRAKE and the IMIV were responsible for his injuries.

### A. The M/V DRAKE

There is no evidence that the M/V DRAKE was present when Higginbotham was injured. Indeed, Drake Towing avers that it supplied the crew for the M/V MISS KENNEDY, a pushboat that was used on the Saratoga job. The M/V MISS KENNEDY is not mentioned in the complaint. However, in opposition to defendants' motion to dismiss, Higginbotham claims that the M/V MISS KENNEDY was a Drake vessel on navigable waters that caused his injuries. Even if Higginbotham misidentified in his complaint the M/V MISS KENNEDY as the M/V DRAKE, the M/V MISS KENNEDY's vessel logs for April 22, 2012, prove that the M/V MISS KENNEDY was not at the Saratoga work site at the time of Higginbotham's injuries. Thus, it could not have been a vessel on navigable waters that caused Higginbotham's injuries.

### B.  The IMIV

Drake Energy argues that the IMIV was not a vessel because it was not used as a means of transportation on water.  Thus, its actions or inactions cannot be the basis for admiralty jurisdiction.  Higginbotham contends, without supporting evidence, that the IMIV "was being used in a transportation role."

The definition of "vessel" includes "every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water." 1 U.S.C. § 3.  "The determination of whether a given craft is a vessel is ordinarily resolved as a matter of law," but "at the margin, fact issues may be present." Manuel v. P.A.W. Drilling & Well Serv., Inc., 135 F.3d 344, 347 (5th Cir. 1998) (citing Ducote v. V. Keeler & Co., Inc., 953 F.2d 1000, 1002 (5th Cir. 1992) ("marginal claims are properly left for jury determination"); Gremillon v. Gulf Coast Catering Co., 904 F.2d 290, 292 (5th Cir. 1990); Bernard v. Binnings Constr. Co., Inc., 741 F.2d 824, 829 (5th Cir. 1984)).

In Lozman v. City of Riviera Beach, FL, 133 S.Ct. 735, 740-41 (2013), the Supreme Court of the United States emphasized that "[n]ot *every* floating structure is a 'vessel[,]'" and that the statutory definition codified at 1 U.S.C. § 3 "applies to an 'artificial contrivance . . . capable of being used . . . *as a means of transportation on water*.'" The Court cited the meaning of "transportation" as involving the 'conveyance (of things or persons) from one place to another[,]" and noted that this definition must be applied "in a 'practical,' not 'theoretical,' way." Id. at 741 (citations omitted). The Court held that "a structure does not fall within the scope of this statutory phrase unless a reasonable observer, looking at the [floating structure's] physical characteristics and activities, would consider it designed to a practical degree for carrying people or things over water." Id.

Applying Lozeman, the court in Martin v. Fab-Con, Inc., 9 F.Supp.3d 642, 649 (E.D. La. 2014), found that the UNITY was not a "vessel" for the purposes of the general maritime law. The UNITY was a quarters barge used as a "floating hotel" for workmen at a job site. It did not have an engine or rudder, and was spudded in place at the time of the accident at issue in that case. Id. at 644. The court reasoned that these characteristics demonstrated that a reasonable observer would not "think that the UNITY was designed to a practical degree for transporting people or cargo over water." Id. at 649. The court noted that Lozman specifically abrogated prior jurisprudence of the United States Court of Appeals for the Fifth Circuit which held that a quarters barge lacking self propulsion was a vessel. Id. (citing Holmes v. Atl. Sounding Co., Inc., 437 F.3d 441 (5th Cir. 2006), *abrogated by*, Lozman, 133 S.Ct. at 743).

The IMIV is substantially similar to the UNITY and the quarters barge considered in Holmes. It is a spud barge that does not have any engines, and must be towed or pushed into place by another vessel. Once in place, the spuds are lowered, and the IMVI is secured to the riverbed. The IMIV was secured in place next to Saratoga's well, and served as a dormitory for Alliance's workers at the time of plaintiff's accident. There is no evidence demonstrating that the IMIV was designed to a practical degree for transporting people or cargo over water, or that it was "used in a transportation function" as Higginbotham suggests. Therefore, the IMIV was not a "vessel" for general maritime law purposes. Defendants' motion to dismiss is GRANTED, and plaintiff's claims against them are DISMISSED.

## CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (Doc. #21) is **GRANTED**, and plaintiff's claims are **DISMISSED**.

New Orleans, Louisiana, this __24th__ day of September, 2015.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**